# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:10-cv-00105-W

| | | |
|---|---|---|
| **GOODRICH CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

THIS MATTER is before the Court on the parties' cross-motions for partial summary judgment (Docs. Nos. 29, 30). The motions have been fully briefed, and on May 23, 2011, the Court held a hearing whereby it received oral argument on the pending motions. The Court subsequently took this matter under advisement. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the United States' Motion for Summary Judgment is GRANTED IN PART and DENIED AS MOOT IN PART, and Plaintiff's Motion for Summary Judgment is DENIED AS MOOT.

## I. BACKGROUND

The facts material to resolution of the instant motions are undisputed. On December 22, 1997, Plaintiff Goodrich acquired Rohr, Inc., ("Rohr") and its subsidiaries. At the time, the Internal Revenue Service ("IRS") was examining Rohr for its tax years 1986-89. In late 2000, the IRS issued a notice of deficiency to Rohr asserting that it owed an additional $85 million in federal income tax for the 1986 through 1989 tax years, plus an additional $230 million in interest on the proposed deficiency. Rohr contested owing these additional taxes. Plaintiff employed and sought advice from the firm of Arthur Andersen on the issue of trust strategies for these contested liabilities. On

December 20, 2001, Rohr created the Rohr Trust pursuant to a written trust document to provide for the payment of the interest on the income tax that Rohr allegedly owed to the IRS. The Trust Agreement specifically provides, "WHEREAS, Rohr, Inc., ('Rohr') which is a wholly-owned subsidiary of Goodrich Corporation ('Goodrich'), desires to create a trust as a means for providing for the payment of certain contingent liabilities to the Internal Revenue Service of the Department of the Treasury of the United States of America (the 'IRS')." The Agreement also stated, "Rohr, by virtue of the trust created hereby, intends to relinquish all control over the property contributed to such trust."

To fund the Rohr Trust, Rohr assigned to Bank One Trust Company, N.A., as the trustee ("Trustee") unsecured promissory notes ("Notes") that Rohr received from Plaintiff. Plaintiff contends these Notes were intercompany receivables that represented amounts owed to Plaintiff by its subsidiaries for advancing funds to or on behalf of the subsidiaries, intercompany sales of goods, and intercompany provision of services. Plaintiff used these Notes to fund the Rohr Trust by contributing them to Rohr, who in turn contributed them to the Trust. Plaintiff contends the fair market value of the Notes equaled their face value of approximately $250 million, which also corresponded to the amount of interest liabilities on taxes the IRS claimed Rohr owed. The United States disputes the fair market value of the Notes and contends they were worth much less than the amount Plaintiff asserts.[1]

The same day the trust was created, Plaintiff notified the IRS via certified mail that Plaintiff had established the Trust and had transferred the Notes to pay Rohr's interest obligation that could

_____

[1]The value of the Notes is not at issue in the motions at bar.

arise from the settlement of the contested interest liability. The United States acknowledges that the IRS received the letter and a copy of the trust agreement after the Trust had been formed.

In 2001 and 2002, Plaintiff filed consolidated tax returns that included, among others, its subsidiary Rohr. Plaintiff then took deductions for the interest expense related to the Rohr Trust on its returns for 2001 and 2002 under 26 U.S.C. § 461(f). On its 2001 tax return, Plaintiff deducted $229,261,071 in interest expense related to the Rohr Trust, which Plaintiff contends represented the interest on the Rohr tax deficiencies that had accrued on or before the day the Rohr Trust was created. This 2001 interest deduction is the subject of a case in the Tax Court and not before this Court. On its 2002 return, Plaintiff claimed a deduction of approximately $13.6 million, which was carried back to 1997 because Plaintiff had a net operating loss and owed no income tax for 2002.[2] This amount allegedly represented the interest expense that had accrued on the Rohr tax deficiencies from December 20, 2001 (the day of the trust's creation) to June 30, 2002, and is the subject of the instant suit.

On March 28, 2006, the Tax Court approved a settlement between Rohr and the IRS. The Trustee subsequently demanded payment on one of the Notes issued by Plaintiff's subsidiary Coltec Industries, Inc., to pay the IRS the amount of the contested interest liability owed under the settlement. Coltec paid the full face value of the Note to the Trustee, and the Trustee in turn used these cash proceeds to send three checks payable to the United States Treasury to pay the interest

---

[2] Plaintiff had paid in full its federal income taxes for the tax year ended December 31, 1997. Plaintiff contends it had a net operating loss in 2002, in part due to the $13,600,369 in interest expense related to the Rohr Trust. This net operating loss could be carried back to 1997 and resulted in an overpayment of tax for the 1997 tax year. The Government contests the portion of the 2002 net operating loss resulting from the interest expense.

liability that had accrued on account of Rohr's underpayment of income tax for the years 1987-1989. In 2007, the Rohr Trust was terminated, and the remaining Notes reverted back to Rohr.

In August 2007, the IRS issued a report denying Plaintiff's interest expense deductions with respect to the Rohr Trust. Plaintiff appealed to the IRS Appeals Office, and on September 10, 2009, the IRS disallowed Goodrich's Claim for Refund resulting from the 2002 deduction of interest expense in the amount of $13,600,369 related to the Rohr Trust. Plaintiff subsequently filed this action seeking to recover at least $2,680,655 in federal income tax erroneously assessed and collected with respect to its tax year ending December 31, 1997, together with overpayment interest thereon.

## II. ANALYSIS

Generally speaking, the issue before the Court is whether Plaintiff may claim a tax deduction for its transfer of the Notes to the Rohr Trust to satisfy the contested liability with the IRS, where the IRS never affirmatively consented to the terms of the trust. Based on a plain reading of Treasury Regulation § 1.461-2, which supplements 26 U.S.C. § 461(f)(2), Plaintiff may not claim the deduction.

### A. Introduction

In reviewing the cross-motions for summary judgment, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, the relevant facts to the instant motions are undisputed.

As a threshold matter, it is well-settled that "tax deductions are matters of legislative grace to be strictly construed. Only if there is clear provision for a deduction may it be allowed." Matter of I.J. Knight Realty Corp., 431 F.Supp. 946, 954 (E.D. Pa. 1977) (citing Commissioner v. National

Alfalfa Dehydrating, 417 U.S. 134, 148-49, 94 S. Ct. 2129, 40 L. Ed. 2d 717 (1974); New Colony

Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S. Ct. 788, 78 L. Ed. 1348 (1934)).

In this case, Plaintiff relies on Section 461(f) of the Internal Revenue Code (26 U.S.C. §

461(f)) to provide the basis for its deduction. Under that statute as it existed in 2002, a taxpayer

could take a deduction in the year of a transfer of money or other property to satisfy a contested

liability, even though resolution and payment of the contested liability may not occur until another

tax year. In order to qualify as a deductible expense, Congress set forth four statutory requirements

that must be satisfied:

> (1) the taxpayer contests an asserted liability,
> (2) the taxpayer transfers money or other property to provide for the satisfaction of an asserted liability,
> (3) the contest with respect to the asserted liability exists after the time of the transfer, and
> (4) but for the fact that the asserted liability is contested, a deduction would be allowed for the taxable year of the transfer . . . .

26 U.S.C. § 461(f).

Here, the United States concedes that Plaintiff can fulfill the first and third requirements

under 26 U.S.C. § 461(f)(1) and (3) respectively. The parties, however, vehemently dispute whether

Plaintiff can demonstrate the second requirement, 26 U.S.C. § 461(f)(2), specifically whether

Plaintiff transferred money or other property to provide for the satisfaction of an asserted liability.

Both parties have moved for partial summary judgment in their favor on this issue.

The United States also contends that Plaintiff cannot satisfy the fourth prong, 26 U.S.C. §

461(f)(4), because Plaintiff did not transfer the type of property that could be used to pay the IRS.

The United States has moved for partial summary judgment on this issue. While some discussion

of the type of property placed into the Rohr Trust is pertinent to explain compliance with §

461(f)(2), the Court's ruling as to whether Plaintiff satisfied the requirement within § 461(f)(2) moots the issue of whether Plaintiff fulfilled the statutory requirement within § 461(f)(4).

## B.  26 U.S.C. § 461(f)(2) and Treas. Reg. § 1.461-2(c)(1)

Section 461(f)(2) of the Internal Revenue Code requires "the taxpayer transfer[] money or other property to provide for the satisfaction of an asserted liability."  The language of 26 U.S.C. § 461(f)(2) does not define or further explain the meaning of "transfers," nor does it expound upon the meaning of "other property."  The Court is thus guided by the pertinent Treasury Regulations, which are issued to interpret the Internal Revenue Code.  Chernin v. United States, 149 F.3d 805, 810 (8th Cir. 1998) ("Section 461(f) is silent on the mechanics of the transfer requirement.  And in such situations, deference is generally accorded the interpretation of the agency charged with enforcing the statute.") (citing Commisioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S. Ct 695, 92 L. Ed. 831 (1948) (stating that Treasury regulations in particular are entitled to deference as administrative interpretations of a statute)).

Such deference results from the powers delegated from Congress to the Treasury Department.  "[F]ederal income taxation is immensely complex, and Congress does not have the time or the knowledge to formulate comprehensive rules for its administration. It delegates expansive authority to the Treasury, which promulgates regulations only after long and painstaking consideration."  Lantz v. Commissioner, 607 F.3d 479, 486 (7th Cir 2010).  The Supreme Court recently stated, "Filling gaps in the Internal Revenue Code plainly requires the Treasury Department to make interpretive choices for statutory implementation at least as complex as the ones other agencies must make in administering their statutes."  Mayo Foundation for Medical Educ. and Research v. U.S., 131 S. Ct. 704, 713 (2011) (citing Bob Jones Univ. v. United States, 461 U.S. 574,

596, 103 S. Ct. 2017, 76 L. Ed. 2d 157 (1983) ("[I]n an area as complex as the tax system, the agency Congress vests with administrative responsibility must be able to exercise its authority to meet changing conditions and new problems.")).

To provide guidance on the transfer requirement, the Treasury Department issued Treas. Reg. § 1.461-2, which is entitled "Timing of deductions in certain cases where asserted liabilities are contested." 26 C.F.R. § 1.461-2. Notably, neither party appears to contest whether Treas. Reg. § 1.461-2 applies, nor do the parties seem to challenge the validity of the regulation. See generally Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). They both seem to agree that resolution of the instant motions turns on the interpretation of Treas. Reg. § 1.461-2(c)(1). Indeed, both parties cite to and rely on the regulation throughout their respective motions and opposing responses. The dispute, however, arises in determining the scope and application of the regulation. The regulation, as it existed at the time period relevant to the instant transaction, provides:

> In general. A taxpayer may provide for the satisfaction of an asserted liability by transferring money or other property beyond his control (i) to the person who is asserting the liability, (ii) to an escrowee or trustee pursuant to a written agreement (among the escrowee or trustee, the taxpayer, and the person who is asserting the liability) that the money or other property be delivered in accordance with the settlement of the contest, or (iii) to an escrowee or trustee pursuant to an order of the United States . . . .

26 C.F.R. § 1.461-2(c)(1) (2001).

The United States contends Plaintiff failed to satisfy 26 U.S.C. § 461(f)(2) for two reasons: (1) Plaintiff did not obtain written consent to the Rohr Trust from the IRS, as required by Treas. Reg. § 1.461-2(c)(1)(ii); and (2) Plaintiff did not relinquish all control to the Trust or the trust corpus. Plaintiff disagrees and argues no written agreement is necessary where the IRS silently assented to the trust. Plaintiff further asserts it relinquished control over the property placed into

the trust as required by the statute.  The Court finds the "written agreement" issue to be dispositive,

and therefore addresses it first.

**C.      Whether a "written agreement" exists among the Trustee, Plaintiff and the IRS**

The United States contends that a plain reading of Treas. Reg. § 1.461-2(c)(1)(ii) requires

that the Trust Agreement contain the signature of the IRS, who is "the person . . . asserting the

liability," or, at a minimum, that the IRS give written consent to the trust.  Put another way, the

United States contends the phrase "written agreement (among the escrowee or trustee, the taxpayer,

and the person who is asserting the liability)" means what it says – that is, the escrowee or trustee,

the taxpayer, and the person asserting the liability must all agree in writing.  <u>Id.</u>  While the parties

do not contest that Plaintiff mailed and the IRS received a certified letter describing the Rohr Trust

(along with a copy of the Trust Agreement), the parties also agree that the IRS neither signed the

Trust Agreement nor otherwise provided affirmative, written assent.  The Court of Appeals for the

Second Circuit in <u>Poirier & McLane Corp. v. Commissioner</u>, 547 F.2d 161 (2d Cir.1976), and the

Claims Court in <u>Rosenthal v. United States</u>, 11 Ct. Cl. 165 (1986), have agreed with the United

States' argument here.  Both of those courts held that affirmative assent had to be provided by the

person asserting the liability in order to comply with Treas. Reg. § 1.461-2(c)(1)(ii).[3]

On the other hand, Plaintiff contends it satisfied the regulation when it provided written

notice to the IRS of the Rohr Trust and the IRS did not dispute, contest, or otherwise respond to the

notice.  Plaintiff additionally argues that the regulation is satisfied even without written consent

---

[3]As discussed below, <u>Poirier</u> did not explicitly require such assent be provided in writing;
however, the case unequivocally stated: "The language in the Regulation is clear that an essential
requirement for deduction is that the claimants must agree to the establishment of the trust."  547 F.2d at
166.

when the claimant is a beneficiary to (and therefore party to) a written trust agreement. Two courts have adopted Plaintiff's position that the signature or express consent of the IRS is not required and ruled that the statute is satisfied as long as the trust was not kept secret from the person asserting the liability and the money or other property was transferred outside the control of the taxpayer. <u>See, e.g.</u>, <u>Chem Aero, Inc. v. United States</u>, 694 F.2d 196 (9th Cir. 1982); <u>Varied Invs., Inc. v. United States</u>, 31 F.3d 651 (8th Cir.1994).

While there is a split in the circuits on this dispositive issue, neither the Fourth Circuit nor any other district court within the Fourth Circuit has addressed this precise issue. This Court joins the Second Circuit and the Claims Court and agrees with the United States that a plain reading of the Regulation requires written consent from the "person who is asserting the liability" – in this case, the IRS.

### 1.    "Written Agreement" Among the Three Parties Required

The phrase at issue here, once broken down and defined, requires an agreement among all three parties. "Agreement" is defined as "an arrangement as to a course of action." Webster's New Collegiate Dictionary 24 (1977). Black's Law Dictionary also explains the natural meaning of the word "agreement" as:

> A coming together of minds; a coming together in opinion or determination; the coming together in accord of two minds on a given proposition. In law, a concord of understanding and intention between two or more parties with respect to the effect upon their relative rights and duties, of certain past or future facts or performances. . . . The act of two or more persons, who unite in expressing a mutual and common purpose, with the view of altering their rights and obligations. The union or two or more minds in a thing done or to be done; a mutual assent to do a thing. . . .

Black's Law Dictionary 62 (5th ed. 1979). The definition of the word "among" is also helpful. Webster's defines "among" as "in company or association with." Webster's Third Collegiate Dictionary 38; <u>see also</u> Black's Law Dictionary 76 (defining "among" as "mingled with or in the

same group or class. Intermingled with. In company or association with."). Keeping these definitions in mind, a "written agreement (among the escrowee or trustee, the taxpayer, and the person who is asserting the liability)" means that all three named parties must–in association with each other *and in writing*–come to a meeting of the minds regarding the transfer of money or other property that will eventually "be delivered in accordance with the settlement of the contest." Treas. Reg. § 1.461-2(c)(1).[4]

In <u>Poirier</u>, the Second Circuit considered whether a unilateral transfer of funds to a trustee for payment of an asserted liability constituted a deductible expense under 26 U.S.C. § 461(f) where the claimants were not parties to the agreement. In <u>Poirier</u>, the court explained, "None of the claimants in any of the pending actions signed this trust agreement, nor were they notified of the existence of the trust." 547 F.2d at 162-63. This, according to <u>Poirier</u>, proved problematic for the taxpayer-plaintiff in that case. After discussing the purpose and intent behind enactment of the statute,[5] the court concluded, "there is no indication that Congress intended to provide a deduction by simply establishing a contingent liability reserve. Thus, the Senate Supplemental Report clearly stated that a mere entry on the taxpayer's books, the purchase of a bond to secure eventual payment of a judgment, or transfer of funds to an account within the taxpayer's control did not qualify for a

---

[4]Plaintiff notes that the initial version of Treas. Reg. 1.461-2(c) offered for note and comment in July 1964 used the phrase "with the agreement of such person," which references the person asserting the liability against the taxpayer. (Doc. No. 43). In the final version, the regulation included, for the first time, the phrase "written agreement (among the escrowee or trustee, the taxpayer, and the person who is asserting the liability)." Plaintiff argues that the final version omitted the requirement of obtaining "the agreement of such person." To the contrary, the final regulation is more specific requiring a "written agreement"–not just any agreement, as the initial version required–and includes all three key parties, not merely the person asserting the liability.

[5]The court first carefully detailed the legislative history behind Congress enacting § 461(f), much of which need not be restated here other than to note the undersigned has reviewed, agrees with, and adopts the history and analysis as set forth in that case. 547 F.2d at 165.

deduction." Id. (citing 1964 U.S. Code Cong. and Adm. News p. 1913). The court further explained

that Treas. Reg. § 1.461-2(c)(1)(ii) closely tracks the legislative history of the corresponding statute

by stating that "deductions were only permitted for payments to trusts that resembled the escrow

agreement specifically described by Congress." 547 F.2d at 166.

To that end, the claimants (i.e., "the person who is asserting the liability") must agree to the

escrow, or trust, agreement:

> The language in the Regulation is clear that an essential requirement for deduction
> is that *the claimants must agree to the establishment of the trust*. This requisite
> forms an integral part of the Regulation and effectuates the intent of § 461(f). And
> there is a sound reason for this because the agreement of all the parties, in effect, is
> the equivalent of a direct payment of the asserted claim. It fixes the fact and amount
> of the liability in a single taxable year, warranting deduction of the payment as a
> distinct tax event.

Id. (emphasis added). The Second Circuit noted the plaintiffs did not face the "exigencies of

litigation" in establishing the trust but instead transferred the assets voluntarily, unilaterally, and

"principally dictated by tax motives." Id. The court thus concluded that in order to safeguard

against abuses of 26 U.S.C. § 461(f), "the assent of the person asserting the liability is required

under Treas. Reg. § 1.461-2(c)(1)(ii)." Id. at 167. The court ultimately ruled the trust at issue in that

case failed to comply with the requirements of Treas. Reg. § 1.461-2 because the claimants did not

assent to the trust, and therefore, the plaintiff was not entitled to a deduction for tax purposes. Id.

at 167. While Poirier did not explicitly state in the majority opinion that *written* assent was

required,[6] the court unequivocally noted that the person asserting liability must agree to the trust

---

[6] But see, 547 F.2d at 167 (Mansfield, J., dissenting). The dissenting opinion throughout
presumes the majority's opinion requires such assent to be in writing. In the dissent, Judge
Mansfield made several references to the requirement of written assent based on the majority
ruling. He notes, "[t]he majority, in denying deductibility on the ground that the claimants did
not sign the trust instrument . . ." and "[t]he majority further proceeds to reason that the
claimant's signature on the trust agreement is required . . . ." Id. at 167, 170. Remarkably, the

arrangement.  In ruling that the claimants' assent was essential, the court explicitly *rejected* the notion that "the important condition precedent" is "whether the transfer is made 'beyond the taxpayer's control.'"  Id.

Similarly, in the Claims Court case of Rosenthal, the plaintiff-taxpayer was involved in a dispute concerning a breach of a contract.  While the litigation was pending, the taxpayer established a trust indenture among the taxpayer's company and the bank, who as trustee, was to hold the trust property "'for the sole purpose of the payment of the obligation of the Grantor which may arise out of litigation pending against the Grantor relating to an agreement . . . .'"  Similar to the facts under Poirier, the claimant to the contested liability "did not sign or assent to the trust indenture and was not aware of its existence or of the payments to it." 11 Cl. Ct. at 166.  Relying on the reasoning in Poirier, the Claims Court held, "[A]s long as the person asserting liability is aware of *and* agrees *in writing* to the transfer of assets by the taxpayer to provide for the satisfaction of the contested liability between them the regulatory requirements are met."  Id. at 172 (emphasis added).

Plaintiff argues these cases requiring the Government's agreement are distinguishable because in both instances, the trusts were kept secret from the beneficiaries, whereas here, the Rohr Trust was disclosed to the IRS on the same day it was created.  While true, that fact does not make these cases inapplicable.  The courts clearly held that something–be it agreement or affirmative assent–was required in order for the taxpayer to qualify for the deduction.  The holdings in those cases did not hinge on the hidden nature of the trust, but instead, turned on the regulation's explicit requirement of an agreement "among the . . . trustee, the taxpayer, and the person who is asserting the liability . . . ."  See Poirier, 547 F.2d. at 162 ("We believe the Regulation plainly requires the

_____

majority opinion never rejects the dissent's synopsis of the majority ruling.

-12-

person asserting liability to be a party to the trust agreement."); Rosenthal, 11 Cl. Ct. at 172 ("The regulation does require that the person asserting liability, along with the taxpayers and the trustee, agree in writing to the transfer of money to satisfy the asserted liability, when required on settlement of the claim."). This Court therefore rejects Plaintiff's interpretation of these cases.

Plaintiff also points to the case of Chem Aero, Inc. v. United States, 694 F.2d 196, 200 (9th Cir. 1982), which ruled that the regulation provided an illustrative, as opposed to an exhaustive, list of approved methods of transfer because the regulation begins with the introductory phrase "In general." 694 F.2d 196, 199 (9th Cir. 1982). In that case, the Ninth Circuit held that the taxpayer who posted a collateralized bond pending appeal was entitled to a deduction for the year the taxpayer posted the collateralized bond, even though the claimant did not agree to or sign any written agreement. Id. at 197. The Chem Aero decision agreed with the dissent in Poirier that "the term 'among' as used in the regulation, does not require the claimant's signature on the agreement." Id. at 199 (citing Poirier, 547 F.2d at 171 (Mansfield, J., dissenting)).

Relying in large part on its ruling that the regulation provided a non-exhaustive list, the Ninth Circuit held that implied consent can satisfy the general requirements of 26 U.S.C. § 461(f), as well as the regulation. Id. at 199. Implied consent in that case occurred because the claimant had an enforceable judgment as well as a bond collateralized with the cash necessary to satisfy it. Id. In so ruling, the court noted, "While such assent necessarily creates a power of enforcement in the claimant, the same effect results when the claimant is treated as the beneficiary of a trust, an escrow or a contract." Id.

Plaintiff argues that this language supports a similar conclusion in this case that no written agreement was required because the IRS was the beneficiary of the Rohr Trust. This Court disagrees, and to so agree would render use of the phrase "written agreement (among the . . .

taxpayer and the person who is asserting liability)" meaningless. As explained in <u>Poirier</u>, the legislative history of the statute suggests that Congress intended not to create a right to a deduction, but instead intended to "'realistically and practically match receipts and disbursements attributable to specific tax years' . . . [to provide] a more realistic reporting of income for tax purposes." 547 F.2d at 165 (citing 1964 U.S. Code Cong. and Adm. News, p. 1913). A transfer pursuant to a written agreement involving consent from the person asserting liability resembles a virtual payment to that person, although the "payment" is being held by a third person pending resolution of that contest.

Furthermore, this Court disagrees with the <u>Chem Aero</u> court's interpretation of the introductory phrase "In general." as indicating that the enumerated examples within the regulation constitute a non-exhaustive list. "Titles and section headings *cannot* limit the plain meaning of statutory text where that text is clear." 1A Sutherland Statutory Construction § 18:7 n. 11 (7th ed.) (emphasis added) (citing <u>M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark</u>, 344 F.3d 335, 181 Ed. Law Rep. 38 (3d Cir. 2003)). Moreover, the title can not be used "to create ambiguity where none existed." <u>Id.</u> Following these principles, the Fourth Circuit has stated, "'the title of a statute cannot limit the plain meaning of the text. For interpretive purposes,[the title] is of use only when it sheds light on some ambiguous word or phrase.'" <u>United States v. Buculei</u>, 262 F.3d 322, 331 (4th Cir. 2001) (holding that the title of the statute did not limit the reach of the statute) (quoting <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 212, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998) (quoting <u>Trainmen v. Baltimore & Ohio R.R. Co.</u>, 331 U.S. 519, 528-29, 67 S. Ct. 1387, 91 L. Ed. 1646 (1947) (alterations omitted))). Here, the regulation is clear and unambiguous: a written agreement among all three parties is required.

-14-

If, as Chem Aero suggests, the three specified instances in the regulation are merely illustrative, then such an interpretation simply makes the regulation not only unhelpful, but also discourages reliance on the plain meaning of the regulation when a transfer occurs that resembles one of the three specified instances. Even if the list is not exhaustive, it includes a specific example of the method Plaintiff attempted to employ here. By using the example as a model, a taxpayer must follow all the requirements of the example; otherwise, the "written agreement" requirement would amount to mere surplusage. See, e.g., United States v. Menasche, 348 U.S. 528, 538–39, 75 S. Ct. 513, 99 L. Ed. 615 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' " (quoting Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S. Ct. 391, 27 L. Ed. 431 (1883))).

Besides this Court disagreeing with the reasoning in Chem Aero, that decision is distinguishable from Poirier, Rosenthal, and the case at bar because in Chem Aero the claimant already had obtained a judgment at the time of the transfer, although the judgment was still contested on appeal. In cases where the transfer is post-judgment, it is arguably unnecessary to obtain written assent of the claimant because the claimant has the security of an actual judgment creating a real liability, not a contingent liability, for the taxpayer, notwithstanding the fact the taxpayer may still be contesting the liability on appeal. In cases such as these, the claimant can act to enforce the judgment, demand an appeal bond, or take some other action under law that ensures the taxpayer satisfies the judgment with money or property acceptable to the claimant.

Plaintiff also cites to the Eighth Circuit's decision in Varied Investments, Inc., v. United States, 31 F.3d 651 (8th Cir. 1994), which followed the Ninth Circuit's reasoning in Chem Aero. In Varied Investments, the court similarly rejected the requirement that the agreement be signed by or agreed to by the claimant and instead focused on whether the taxpayer had relinquished all authority over the money or other property transferred. 31 F.3d at 654 (quoting Chem Aero, 694

F.3d at 198). As in <u>Chem Aero</u>, at the time the plaintiff in <u>Varied Investments</u> made the transfer into the escrow account, the plaintiff already had a judgment against it. As explained above, the Court finds <u>Varied Investments</u> distinguishable because it involved the transfer of property post-judgment and pending appeal and because it relied on the reasoning in <u>Chem Aero</u>, which this Court has already rejected.

## 2. Rationale supporting "written agreement" requirement

Common sense indicates the "written agreement" requirement establishes some accountability from the person who is asserting the liability and helps effectuate Congress' intent in enacting 26 U.S.C. § 461(f), as evidenced by the legislative history of the statute. As noted by the <u>Rosenthal</u> court, "A requirement under Treas. Reg. § 1.461-2(c)(1)(ii) that the claimant must agree in writing to the establishment of the trust is a reasonable interpretation of 26 U.S.C. § 461(f)(2), as such a requirement assists in carrying out the intent of Congress to allow a deduction under § 461(f) only if the taxpayer has transferred money or other property beyond his or her control." 11 Cl. Ct. at 172. In short, the written agreement requirement helps guard against the possibility that the taxpayer retains control over assets following a transfer.[7]

The regulation requires the written agreement among the three parties to provide "that the money or other property be delivered in accordance with the settlement of the contest . . . ." Treas. Reg. § 1.461-2(c)(1). This arrangement and the accountability thus created helps demonstrate that the transferred assets were no longer within the taxpayer's control. As <u>Poirier</u> recognized, "While

---

[7]The United States also argues that Plaintiff failed to comply with § 461(f)(2) because Plaintiff failed to relinquish control over the Rohr Trust by virtue of holding onto certain rights, including the rights to substitute assets and add to the trust. The Court need not decide this issue in light of ruling that no written agreement among the parties exists. Nevertheless, the Court provides the following brief analysis of the control issue for purposes of showing why a "person who is asserting the liability" should be required to sign off on the arrangement.

it is true that the trustee has an independent duty to safeguard trust property, only the person asserting the liability is likely to be zealous in objecting to a breach of that duty." 547 F.2d at 167. Specifically, this accountability created by a written agreement involving the person asserting the liability guards against overstocking the trust (and an inflated corresponding deduction); provides a more accurate accounting of the liability realized; and ensures that the money or other property transferred could actually satisfy the contested liability.

### (i) Overstocking the Trust

In the instant case, the Rohr Trust Agreement provides, "From time to time . . . Rohr may contribute additional monies or property, or substitute other notes, money or property of equal or greater value, to provide for the satisfaction of Contested Interest Liabilities . . . ." (Doc. No. 31-9, p.4). As noted by Rosenthal, "Retention of control over the timing and the amounts of the transfers is not consistent with the Congressional intent behind the enactment of § 461(f). To mitigate the indicia of control over the transferred funds, plaintiffs needed to have [claimants'] agreement to the establishment of the trust." 11 Cl. Ct. at 172.

This is particularly true where, as here, the Rohr Trust gave Plaintiff the authority to determine the timing and amounts of its transfers and permitted it to contribute additional notes, money, or property to the trust and claim a corresponding deduction for the increase. Plaintiff was permitted to *increase* the deposits on hand in the Rohr Trust–and held the sole discretion to do so–and no refunds were required by the trustee when the amount in trust exceeded the liabilities.[8]

---

[8]The Court finds the Revenue Ruling 2011-28 submitted by Goodrich to be inapplicable here, particularly where the ruling addresses substitution of "assets of *equivalent* value." (Emphasis added). The Court notes, however, that to the extent no written assent by the IRS was required (which the Court believes is contrary to the plain reading of Treas. Reg. § 1.461-2(c)(1)(ii)), the potential for tax abuse appears to exist in this case where Plaintiff held the sole ability to substitute assets held in trust for the reasons stated herein. Such a broad retention of authority to define the asset in trust undermines the idea

As the Ninth Circuit recognized in <u>Consolidated Freightways v. Commisioner</u>, the arrangement whereby a taxpayer retained the ability to unilaterally *augment* the trust corpus–and thus claim a larger deduction–"would allow [the taxpayer] within a given taxable period to accelerate its deductions and to defer its income without regard to either the total estimated liabilities or the amount of claims settled. This provides an opportunity for tax abuse." 708 F.2d 1385, 1394 (9th Cir. 1983).[9] Accordingly, a written agreement among the taxpayer, trustee, and party asserting the liability guards against such potential tax abuse.

### (ii) Accurate Accounting of the Liability Realized

The "written agreement" requirement also helps accomplish the rationale for Congress' enactment of § 461(f)(2) following the Supreme Court case of <u>United States v. Consolidated Edison Co. of New York</u>, 366 U.S. 380 (1961). In that case, the Court held that an accrual-basis taxpayer could not accrue a payment of a contested liability made in protest as a deductible expense until all the events to determine the fact and amount of liability had occurred – even though the payment in protest had been previously made. <u>Id.</u> at 392. This ruling discouraged a prudent taxpayer from setting aside money or other property to satisfy a potential judgment. Congress subsequently

_____

that a claimant would assent to the trust. While a "person who is asserting the liability" may agree to a trust funded with cash, if the taxpayer retains the power (as Plaintiff did here) to at any time draw the trust of the cash and replace it with a note payable, the prudent claimant would most likely not consent to such reserved powers of the taxpayer. Such consent, however, could be given as matter of contract and suggests another justification for the "written agreement" requirement. <u>See, infra</u>, footnote 10.

[9]In that case, the court considered the issue of whether the taxpayer's arrangement with a surety satisfied the requirements for deductibility under § 461(f). Without addressing the "written agreement" requirement, the court ruled the plan did not qualify under the statute. Although the money transferred by the taxpayers was "under the absolute control" of the surety, the court refused to hold that the plan satisfied section 461(f), noting, "Its fatal flaw is that refunds by [the surety] are made only at irregular intervals. Deposits were required not to be less than estimated liabilities; but refunds were not required when deposits exceeded liabilities. Consolidated's accounts therefore had the potential of not being in balance at the end of the tax year." <u>Consolidated Freightways</u>, 708 F.2d at 1393-94.

enacted 26 U.S.C. § 461(f) to permit the prudent taxpayer to take the deduction in the year it made the transfer instead of waiting until liability had been determined, which could take years. Thus, a prudent taxpayer faced with a contested liability who, in order to plan for the worst, transfers money or other property out of its control can take the tax deduction at the time of transfer instead of waiting until the liability is finalized and actually paid to the opposing party. Under the tax principles of realization and recognition, such a result provides a better indicator of the taxpayer's true status with regards to those transferred assets: the taxpayer can recognize the expense and take the deduction when the expense is actually realized. Until Congress acted following the Supreme Court ruling in <u>Consolidated Edison</u>, the taxpayer, however, could not recognize the expense and take the deduction until judgment, which could be years after the taxpayer actually realized the expense.

### (iii) Acceptance of Transferred Money or Other Property by the Person Asserting the Liability

The "written agreement" implies that the person asserting the liability would subsequently accept the transferred asset as payment upon resolution of the contested liability. The "person who is asserting the liability" benefits by virtue of having the opportunity to agree to or reject the transfer of the assets (especially the type of property) that will eventually satisfy the liability judgment in its favor. For example, following determination of the liability, a taxpayer who had obtained written consent from the "person . . . asserting the liability" to some form of escrow or trust arrangement under § 461(f)(2) and Treas. Reg. § 1.461-2(c)(1)(ii) could subsequently tell the judge overseeing the judgment that payment for damages had previously been set aside in a fund, which the "person . . . asserting the liability" had previously agreed to in writing. Under Plaintiff's argument–that the person asserting the liability does not need to explicitly consent to the arrangement–the taxpayer

could set aside property that the person asserting the liability would not accept as payment on the judgment. As <u>Poirier</u> so aptly observes, "[T]he agreement of all the parties, in effect, is the equivalent of a direct payment of the asserted claim." 547 F.2d at 166. It would be twisted to allow the taxpayer to take a tax deduction for setting aside an asset to pay a future judgment that the person asserting the liability would not accept as satisfaction of the judgment. Thus, the written consent by the "person who is asserting the liability" to the escrow or trust and the type of property placed in escrow or trust is another safeguard to prevent tax abuse and ensure that the transfer of assets is legitimate.[10]

### 3. Common Law on Trusts, Silence as Assent, and Estoppel to Preclude "Written Agreement" Requirement

In addition to their reliance on the cases out of the Eighth and Ninth Circuits, Plaintiff provides several other bases for rejecting the "written agreement" requirement, including law governing trusts, silence as assent, and the doctrine of equitable estoppel. The Court addresses these arguments in turn.

### a. Common Law

Plaintiff contends that under common law, a beneficiary of a trust need not provide a signature or other written consent to a trust. While true, neither the statute nor the regulation require a "trust" to be created in order to claim the tax deduction. Instead, the regulation is written more

---

[10] Plaintiff essentially transferred "IOUs" –that is soft assets–to fund the Rohr trust, assets that raise a serious question of whether the IRS would have ever consented to receiving. Using these soft assets, Plaintiff did not tie up cash and cash equivalent reserves. In fact, Arthur Andersen's Powerpoint presentation to Plaintiff explains that one of the benefits of the Rohr Trust was to "accelerate deduction for contested liabilities without any cash outlay." (Doc. No. 29-4, p.2). Ultimately, the Trustee demanded payment of one of the Notes. Coltec, a subsidiary of Plaintiff, paid the full face value of the note in cash, and the Trustee used these cash proceeds to pay the United States Treasury. Plaintiff and Arthur Andersen accomplished their goal of funding the Rohr Trust without cash.

broadly to require a transfer "to an escrowee or trustee pursuant to a written agreement" signed by three parties: the trustee (or escrowee if the money or other property is being held in escrow as opposed to a trust), the taxpayer, and the party asserting the liability. The Court therefore concludes that common law governing trusts is inapplicable here, and instead the plain language of the statute and regulation control. It is possible, then, that the three parties could sign a separate document aside from an actual trust document, escrow agreement, or other document, so long as each party provides written acknowledgment that it *agrees* that the transferred assets be delivered in accordance with settlement of the contest. See Treas. Reg. § 1.461-2(c)(1). Here, no such written document exists, nor did the IRS ever acknowledge the trust in writing.

### b. Silence and Estoppel

Plaintiff further argues that the IRS's silence constitutes assent, or in the alternative, that the United States should be estopped from seeking to enforce the written agreement requirement. Plaintiff has not persuaded this Court as a matter of law that the IRS's inaction constitutes assent sufficient to preclude the United States from enforcing the "written agreement" requirement under the regulation. Historically, silence is "more compatible with the presumption that [Government personnel] refused to yield to the claimant's solicitation than that they voluntarily assented to such modifications of their rights under the contact." Titcomb v. United States, 14 Ct. Cl. 263, *3 (1878) (Navy contract dispute; noting, "the law does not readily infer that the defendants intended to assent from their mere silence"). "For silence to constitute the basis of an estoppel, the circumstances must have been such as to call for action or a declaration on the part of the party sought to be estopped . . . ." 11A Strong's N.C. Index 4th, Estoppel § 18 (citing Edgecombe Bank & Trust Co. v. Barrett, 78 S.E.2d 730 (N.C. 1953); Sparrow v. Dixie Leaf Tobacco Co., 61 S.E.2d 700 (N.C. 1950); Ramsey v. Nebel, 39 S.E.2d 616 (N.C. 1946); Orchard Scenic Development Co. v. Bon Marche, 189

S.E. 781 (N.C. 1937); <u>Miller v. Miller</u>, 157 S.E. 604 (N.C. 1931)); <u>see</u> <u>also</u> <u>Francis v. Edwards</u>, 77

N.C. 271 (N.C. 1877).  Here, Plaintiff's letter (Doc. No. 31-9) did not request the IRS to sign the

trust agreement, consent to it, or otherwise respond in acknowledgment.

Plaintiff additionally fails to cite to any case applying equitable estoppel to a similar

situation, and the Court is unaware of any.  The Supreme Court has explained the circumstances in

which such a defense may be asserted against the United States.  "When the Government is unable

to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the

citizenry as a whole in obedience to the rule of law is undermined.  It is for this reason that it is well

settled that the Government may not be estopped on the same terms as any other litigant."  <u>Heckler</u>

<u>v. Community Health Services of Crawford Cnty., Inc.</u>, 467 U.S. 51, 60, 104 S. Ct. 2218, 81 L. Ed.

2d 42 (1984); <u>see also</u> Jacob Mertens Jr., Mertens Law of Federal Income Taxation § 60:18.

<u>Heckler</u> further noted that the Supreme Court has declined to adopt a *per se* rule that "estoppel may

not in any circumstances run against the Government."  <u>Id.</u> (citations omitted).  Instead, cases may

exist where "the public interest in ensuring that the Government can enforce the law free from

estoppel might be outweighed by the countervailing interest of citizens in some minimum standard

of decency, honor, and reliability in their dealings with their Government."  <u>Id.</u> (Citations omitted).

<u>Heckler</u> explained that a litigant attempting to assert an estoppel defense against the United States

faces a heavy burden.  Indeed, "the private party surely cannot prevail without at least demonstrating

that the traditional elements of an estoppel are present."  <u>Id.</u> at 60.  Plaintiff here has failed to make

any such showing.

In fact, contrary to the general principles of estoppel, by disallowing the deduction in August

2007, within three years from the time it was taken in Plaintiff's Amended 2002 return filed in

September 2004, the IRS specifically rejected Plaintiff's proposed deduction within the proper time

limitation.  See 26 U.S.C. § 6501(a).  Moreover, these facts do not support application of the estoppel doctrine because to conclude otherwise would allow taxpayers to prevent the IRS from disallowing a deduction within the three-year time limitation set by Congress simply by a taxpayer sending a certified letter to the IRS informing the IRS of the taxpayer's intention.

Furthermore, instead of mailing the trust agreement to the IRS and operating under the assumption that the IRS was bound by its silence, Plaintiff could have bound and estopped the IRS through a private letter ruling.  Nothing in the record shows Plaintiff sought any guidance from the Service in the traditional method of a private letter ruling.  In an unpublished case, the Seventh Circuit explained, "In tax cases, only a private letter ruling or a closing agreement will create a binding agreement."  Meyers v. Commisioner., 79 F.3d 1150 *2 (7th Cir. 1996) (unpublished) (citing Jacob Mertens Jr., Mertens Law of Federal Income Taxation § 60, et. seq.).

The Court therefore declines to apply the equitable doctrine of estoppel to preclude the IRS from enforcing the requirements of 26 U.S.C. § 461(f) when it acted within the time allowed by law to disallow Plaintiff's tax deduction.

### 4.      IRS Interpretation of Its Own Regulation

The Court's decision here is consistent with the IRS's interpretation of Treas. Reg. § 1.461-2(c)(1) in its pleadings here.  "When the question before the court is whether an agency has properly interpreted and applied its own regulation, the reviewing court must give the agency's interpretation 'substantial deference.'"  Maryland General Hosp., Inc. v. Thompson,  308 F.3d 340, 343 (4th Cir. 2002) (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994)).  In Polm Family Foundation, Inc. v. U.S., 644 F.3d 406, 409 (D.C. Cir. 2011), the D.C. Circuit explained that such deference is appropriate "even if the interpretation appears for the first time in a legal brief."  (Citing Chase Bank USA, N.A. v. McCoy, __ U.S.__, 131 S. Ct. 871,

880–81, 178 L. Ed. 2d 716 (2011); <u>Bigelow v. Dep't of Def.</u>, 217 F.3d 875, 878 (D.C.Cir. 2000)).

In <u>Polm Family</u>, the court concluded, "'Because the interpretation the [IRS] presents in its brief is consistent with the regulatory text,' <u>Chase Bank</u>, 131 S. Ct. at 880, we have no basis for rejecting it in favor of some other version.'" <u>Polm Family Foundation</u>, 644 F.3d at 409. "'Deference, of course, does not mean blind obedience,' <u>Garvey v. NTSB</u>, 190 F.3d 571, 580 (D.C.Cir.1999), and no deference is due if the agency's interpretation 'is plainly erroneous or inconsistent with the regulation,' <u>Thomas Jefferson Univ.</u>, 512 U.S. at 512, 114 S. Ct. 2381 (internal quotation marks omitted)." <u>Maryland General Hosp.</u>, 308 F.3d at 343. The Court finds that the IRS's interpretation of Treas. Reg. § 1.461-2 in its pleadings to be neither plainly erroneous nor inconsistent with the regulation, particularly where such interpretation gives plain meaning to the terms and requirements set forth in the regulation.

### 5. Summary

Based on a plain reading of Treas. Reg. § 1.461-2(c)(1), the reasoning in <u>Poirier</u> and <u>Rosenthal</u>, common sense, legislative history, and the IRS interpretation of its own regulation, the Court holds that a written agreement or written assent among Plaintiff, Bank One (as the trustee) and the IRS is necessary in order to satisfy the statutory and regulatory requirements for deductibility. The parties agree that no such written agreement or affirmative assent exists. Accordingly, partial summary judgment for the United States on the issue of whether Plaintiff is entitled to a deduction under § 461(f) is appropriate.

### D. Other provisions of § 461(f)

Because the Court has concluded that Plaintiff cannot demonstrate the existence of a written agreement among the parties and that it therefore is not entitled to a deduction under 26 U.S.C. § 461(f), the Court need not provide a ruling on whether Plaintiff satisfied the other statutory

requirements under § 461(f)(4).  Accordingly, Plaintiff's Motion for Summary Judgment is DENIED as moot, as are the remaining portions of the United States's Motion for Summary Judgment.

### III. Conclusion

Justice Learned Hand once wrote, "Over and over again courts have said that there is nothing sinister in so arranging one's affairs as to keep taxes as low as possible.  Everybody does so, rich or poor, and all do right, for nobody owes any public duty to pay more than the law demands: taxes are enforced exactions, not voluntary contributions.  To demand more in the name of morals is mere cant."  Commissioner v. Newman, 159 F.2d 848, 850-51 (2nd Cir. 1947) (dissenting).  Plaintiff legitimately took an aggressive tax avoidance position in reliance on the loophole created by the Ninth Circuit in Chem Aero and the Eighth Circuit in Varied Investments.  Based on the Poirer and Rosenthal cases, however, taking such a position involved a risk, particularly where Plaintiff neither specifically requested nor obtained the IRS's written assent.

"Section 461(f) does not create the right to a deduction.  It is, in essence, a timing provision which allows a taxpayer to take a deduction in the year he or she transfers money or other property to provide for the satisfaction of an asserted liability rather than in a later year when the contested claim is settled.  Taxpayers are not entitled to the deduction under § 461(f) unless they satisfy its requirements."  Rosenthal, 11 Cl. Ct. At 172.  The Court holds that, pursuant to Treas. Reg. § 1.461-2, Plaintiff was required to obtain written agreement or express assent from the IRS in order for the Rohr Trust to qualify for a deduction under 26 U.S.C. § 461(f). Plaintiff did not do so, and the United States is therefore entitled to partial summary judgment.

IT IS THEREFORE ORDERED that the United States's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED AS MOOT IN PART. IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is DENIED AS MOOT.

Signed: January 18, 2012

Frank D. Whitney
United States District Judge